IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CONSERVATION COUNCIL FOR HAWAII, and AMERICAN BIRD CONSERVANCY, <br><br> Plaintiffs, <br><br> vs. <br><br> HAWAIIAN ELECTRIC COMPANY, INC., *et al.*, <br><br> Defendants. | Civil No. 24-00494 MWJS-WRP <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT COUNTY OF MAUI'S MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Plaintiffs Conservation Council for Hawai'i and American Bird Conservancy allege that Defendant County of Maui's streetlights unlawfully harm—or in the language of the Endangered Species Act, "take"—protected Hawaiian seabirds.  Both Plaintiffs and the County believe that the undisputed evidence in this case entitles them to judgment as a matter of law for their respective side, and so each has now moved for summary judgment.  Because the court concludes that there are credibility disputes that must be resolved at trial, both parties' motions are DENIED.

**BACKGROUND**

The court provided a detailed overview of the factual and procedural history of this case in a prior order resolving the parties' motions to exclude expert testimony.  *See*

*Conservation Council for Haw. v. Hawaiian Elec. Co.*, Civil No. 24-00494, 2026 WL 1113471 (D. Haw. Apr. 24, 2026). And the parties are familiar with the factual allegations and procedural history. For these reasons, the court will not recount them here except as necessary to give context to its ruling.

In November 2024, Plaintiffs filed this lawsuit. Dkt. No. 1. Their complaint alleges that three species of seabirds listed under the Endangered Species Act (ESA), 16 U.S.C. § 1531 et seq.—the ʻuaʻu, or Hawaiian petrel (*Pterodroma sandwichensis*); ʻaʻo, or Newell's shearwater (*Puffinus newelli*); and ʻakēʻakē, or band-rumped storm-petrel (*Hydrobates castro*)—are threatened and often injured or killed due to streetlights operated by Defendants Hawaiian Electric Company, Inc. and Maui Electric Company, Ltd. on behalf of Defendant County of Maui. As alleged, Defendants' streetlights distract and attract these seabirds as they make their way from nesting grounds across Maui, Lānaʻi, and Molokaʻi (collectively, the islands of Maui Nui) to their hunting grounds out at sea. That is because, according to Plaintiffs, the pools of light cast by streetlights resemble "ecologically significant" light sources for the birds, which draw them in and cause them to circle the lights until they fall to the ground from exhaustion or strike other nearby objects—a phenomenon known as "fallout." And once grounded, the birds' morphology makes it difficult for them to take flight again, leaving them vulnerable to injury or death due to predation, starvation, dehydration, or vehicle strikes.

The ESA makes it illegal for anyone to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect"—or in the parlance of the ESA, to "take"—any ESA-listed species without a permit.  16 U.S.C. §§ 1532(19), 1538.  It is undisputed that Defendants lack such a permit.  Dkt. No. 153, at PageID.3230.  Plaintiffs therefore allege that because Defendants' streetlights "take" ESA-listed seabirds, their operation of those streetlights without a permit violates the ESA.

Plaintiffs argue in essence that two categories of evidence prove their case.  First, they point to evidence reflecting the "universal[] agree[ment] among seabird scientists and state and federal wildlife agencies that artificial lights, including streetlights, distract, injure, and kill petrels and shearwaters."  Dkt. No. 88, at PageID.394.  In particular, they highlight the determination by federal and state wildlife agencies "that streetlights result in seabird fallout and that Maui County streetlights in particular have resulted in take of ESA-listed seabirds," and the conclusion by the United States Fish & Wildlife Service that "streetlights on Kaua'i attract and cause take of the same ESA-listed seabird species as are present on Maui and Lāna'i."  *Id.* at PageID.394-95.  Second, they offer the testimony of two seabird experts—Jay Penniman and Dr. Hannah Moon, Ph.D.—who have drawn on their experience and the scientific consensus regarding light-related seabird fallout to reach conclusions about seabird fallout on Maui in particular.  Specifically, Penniman and Dr. Moon have offered their opinions—after reviewing data drawn from incident reports documenting the recovery of downed

3

seabirds and comparing it to the location of County streetlights—that "[b]etween 2008 and 2024, at least 143 documented instances of fallout of ESA-listed seabirds on Maui and Lāna'i were likely caused by Maui County streetlights."  *Id.* at PageID.394. Through Penniman's expert report, Plaintiffs submit that the trend has continued through the present day, with at least seven 'ua'u fallout events caused by County streetlights occurring in 2025 alone.  *Id.* at PageID.395.  And although the experts agree that "[e]ven when there are other nearby sources of light, Maui County streetlights contribute to take of ESA-listed seabirds," *id.*, they emphasize that in over twenty of the 143 fallout events attributed to County streetlights, the County streetlights were "the only ecologically relevant lights that could have caused the fallout and, thus, were solely responsible for the fallout."  Dkt. No. 148, at PageID.2873.

In the County's view, by contrast, the evidence unmistakably favors their position.  Although the County "does not deny that artificial lights may distract ESA-listed seabirds," Dkt. No. 153, at PageID.3229, it submits that "the surrounding urban light prohibits isolating a single light source as the cause of fallout," Dkt. No. 89, at PageID.922, thereby preventing any particular instance of fallout from being conclusively linked to a County streetlight.  The County challenges Plaintiffs' experts' methodology and conclusions on this basis, arguing that they "did not attempt to identify, distinguish, or even consider any other sources of artificial light" when conducting their analyses.  Dkt. No. 153, at PageID.3231.  To underscore the importance

of this perceived oversight—and to demonstrate that the surrounding lightscape makes it impossible to prove that any particular County streetlight caused fallout—the County offers its own evidence, including through the testimony of lighting experts Thomas R. Glesne and Dr. John W. Curran, Ph.D., about "the extent of other sources of artificial light and light fixtures which Plaintiffs' experts simply ignore as a potential cause of [seabird] light attraction." *Id.* at PageID.3232.

On this record, Plaintiffs and the County cross-moved for summary judgment in November 2025. Dkt. No. 87 (Plaintiffs' Motion for Summary Judgment); Dkt. No. 90 (Defendant County of Maui's Motion for Summary Judgment). While those motions were pending, each party also filed a motion to exclude its opponent's expert witness testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dkt. No. 104 (Plaintiff's *Daubert* motion); Dkt. No. 105 (Defendant's *Daubert* motion). After reviewing the motions, the court concluded that the issues in the *Daubert* motions were potentially dispositive of the issues in the parties' respective summary judgment motions. The court therefore elected to resolve the *Daubert* motions before considering the merits of the parties' summary judgment motions.

A hearing was held on the *Daubert* motions on April 1, 2026, at which Penniman and Dr. Moon testified. Dkt. No. 137. The court subsequently denied the County's motion to exclude the testimony of Penniman and Dr. Moon; granted Plaintiffs' motion to exclude the testimony of the County's experts to the extent they sought to give

5

opinions about "roadway lighting safety standards" and "the relationship between artificial lighting and seabird biology or behavior;" and denied Plaintiffs' motion in all other respects.  Dkt. No. 143.

After the court issued its order resolving the parties' *Daubert* motions, the court permitted the parties to file supplemental memoranda and concise statements of fact in support of their respective motions for summary judgments.  Dkt. No. 146.  Plaintiff filed a supplemental memorandum, Dkt. No. 147, and concise statement, Dkt. No. 148. The County opposed the motion, Dkt. Nos. 153, 154, and Plaintiffs replied, Dkt. Nos. 157, 158.  The County also filed its own supplemental memorandum, Dkt. No. 150, and concise statement, Dkt. No. 149.  Plaintiffs opposed the motion, Dkt. Nos. 151, 152, and the County replied, Dkt. Nos. 155, 156.  Hawaiian Electric Company, Inc. and Maui Electric Company, Ltd., meanwhile, have taken no position on the summary judgment motions.  Dkt. No. 129.  The court held a hearing on the summary judgment motions on June 1, 2026.  Dkt. No. 160.

## DISCUSSION

In their summary judgment motions, Plaintiffs and the County each contend that there is no need for a trial.  Plaintiffs argue that the evidence in the record—including, most pertinently, their experts' testimony about past seabird take caused by County streetlights, as well as the undisputed scientific consensus that streetlights cause seabird fallout generally—establishes that County streetlights take endangered seabirds and

that the County is liable under the ESA as a matter of law.  The County asserts for its

part that Plaintiffs' evidence fails to distinguish County streetlights "from any and all

other sources of brighter light" and therefore cannot establish proximate causation, and

therefore liability, under the ESA.  Dkt. No. 150, at PageID.2932.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

should be granted where "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  On a motion

for summary judgment, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in [the non-movant's] favor."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 255 (1986).  But if after all reasonable inferences are drawn in

the nonmovant's favor, there remains no genuine dispute of material fact—that is, a

dispute over a fact "that might affect the outcome of the suit"—then the moving party is

entitled to summary judgment.  *Id.* at 248.  By contrast, "summary judgment will not lie

. . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.*

It follows that a judge weighing a motion for summary judgment "must ask

himself not whether he thinks the evidence unmistakably favors one side or the other

but whether a fair-minded jury could return a verdict for the [nonmovant] on the

evidence presented."  *Id.* at 252.  That is, at least in part, because summary judgment is a

"drastic" remedy which threatens to "cut litigants off" from their right to a trial.  *Dawn

7

*v. Sterling Drug, Inc.*, 319 F. Supp. 358, 361 (C.D. Cal. 1970); *see also Consol. Elec. Co. v. U.S. ex rel. Gough Indus., Inc.*, 355 F.2d 437, 438 (9th Cir. 1966) (recognizing summary judgment as a "drastic remedy").  Out of solicitude for that right, "federal courts take great care not to deny the nonmoving party a full trial once it is shown that a genuine issue of fact exists or that the judgment ultimately may depend on the credibility of witnesses."  10A Wright & Miller's Federal Practice & Procedure § 2714 (4th ed. 2026). And so "if a rational trier of fact might resolve" any material issue "in favor of the nonmoving party, summary judgment must be denied."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

With these considerations in mind, the court now turns to each party's motion for summary judgment in turn.

### A.     Plaintiffs' Motion for Summary Judgment Cannot Be Granted Due to Credibility Disputes

When Congress passed the Endangered Species Act in 1973, it did so in order to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of endangered species and threatened species."  *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1064 (9th Cir. 1996) (quoting 16 U.S.C. § 1531(b)).  To effectuate these goals, the ESA includes a citizen suit provision authorizing private parties to

commence a civil suit—like this one—to "enjoin any person . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." *Id.* (quoting 16 U.S.C. § 1540(g)(1)).

It is "a violation of the Act for anyone to 'take'"—that is, "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct," 16 U.S.C. § 1532(19)—any endangered or threatened species. *Marbled Murrelet*, 83 F.3d at 1064. Plaintiffs' allegation in this case is that County streetlights "take" endangered and threatened species in violation of the ESA. *Id.* And, as noted, although a "take otherwise prohibited by [the ESA] may be authorized by an incidental take permit," it is undisputed that the County has not obtained such a permit here. *Our Children's Earth v. Leland Stanford Junior Univ.*, No. 13-CV-00402, 2015 WL 12745786, at *5 (N.D. Cal. Dec. 11, 2015). Accordingly, if County streetlights take ESA-listed seabirds, they do so in violation of the ESA.

"A take may involve a past or current injury, or the prospect of an imminent threat of harm to a protected species." *All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 605 (9th Cir. 2014). But because the only remedy in a citizen suit is injunctive relief, the inquiry is necessarily "forward looking, and is intended to prevent a defendant from taking an endangered or threatened species" in the future. *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 804 (9th Cir. 2009). To prevail on their motion, therefore, Plaintiffs must show that a reasonable factfinder has no

choice but to conclude that they have established, by a preponderance of the evidence, that the County's actions pose "a definitive threat of future harm" to ʻuaʻu, ʻaʻo, and ʻakēʻakē in Maui Nui. *Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994); *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 925 (9th Cir. 2000). Put differently, if Plaintiffs have shown that after crediting all of the County's evidence and drawing every reasonable inference in the County's favor, a factfinder could not avoid the conclusion that County streetlights pose a "reasonably certain threat of imminent harm" to listed species under the ESA, then summary judgment for Plaintiffs must be granted. *See Marbled Murrelet*, 83 F.3d at 1066.

Plaintiffs contend that they have made this showing. In their view, evidence in the record establishes an undisputed scientific consensus that streetlights in general are responsible for distracting, injuring, killing, or otherwise harassing ESA-listed seabirds. *See* Dkt. No. 88, at PageID.394; Dkt. No. 153, at PageID.3229 ("Maui County does not deny that artificial lights may distract ESA-listed seabirds."), *but see id.* ("Maui County does not admit or concede that streetlights in particular have [done so] . . . ."). And they view that conclusion as especially ironclad in light of the testimony of their experts, Dr. Hannah Moon and Jay Penniman, who intend to testify that County streetlights have taken ESA-listed seabirds on hundreds of documented occasions. Based on this record, Plaintiffs argue that they are entitled to summary judgment for two independently sufficient reasons. First, they contend that the County has offered no

10

evidence or argument which might lead a factfinder to reasonably draw an adverse conclusion about Plaintiffs' expert testimony regarding past fallout incidents on Maui. And because such overwhelming evidence of relevant past take strongly supports an inference that future take is reasonably certain to occur, that is sufficient for Plaintiffs to prevail. *Cf. Nat'l Wildlife Fed'n*, 23 F.3d at 1512. Second, they assert that even without any evidence of past take on Maui—which is not required to be shown before an injunction can issue under the ESA—the strength of the undisputed scientific and regulatory evidence alone is sufficient to establish that County streetlights pose a reasonably certain threat of imminent harm.

As an initial matter, Plaintiffs are correct that evidence of past take is not required to prove a definitive threat of future harm under the ESA. *See Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 785 (9th Cir. 1995). That does not mean, however, that it is improper for a factfinder to rely on the absence of past takes to draw the reasonable inference that future takes may not be "reasonably certain" to occur. To be sure, a factfinder is "not *required* to give . . . controlling weight" to a lack of evidence regarding past takes. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1194 (9th Cir. 2024) (emphasis added). But a factfinder is nonetheless permitted to do so. And in the summary judgment posture, where all reasonable inferences must be drawn in favor of the nonmoving party, the court must assume that a factfinder would indeed draw that inference if doing so would be reasonable.

11

Assuming that a factfinder were to find no evidence of past takes on Maui, two key subcategories of evidence would remain:  the undisputed evidence reflecting the overwhelming scientific consensus that streetlights cause seabird fallout, and the undisputed evidence that the lightscape on Maui—at least with regard to County streetlights—has not changed in any meaningful way since 2019, and has largely remained the same over the course of several decades.  And if that is determined to be the totality of the evidence—if, in other words, a factfinder found that despite strong evidence that streetlights cause seabird fallout, no evidence exists of fallout ever occurring in a lighted environment on Maui that has remained static for many years and is not currently undergoing changes that would pose a newfound threat to seabirds—it would not be unreasonable for the factfinder to draw the inference that future takes are not reasonably certain to occur.  So while it is true that the absence of evidence of past takes "does not preclude finding a reasonably certain threat of future harm" based on other undisputed evidence, it is equally true that such other evidence does not *compel* such a finding at summary judgment.  Dkt. No. 158, at PageID.3545 (cleaned up).  In other words, Plaintiffs do not need to demonstrate past take to establish liability under the ESA as a matter of law, but the failure to do so in this specific factual context would preclude the entry of summary judgment in their favor.

Of course, Plaintiffs assert that they have overwhelming evidence of past takes caused by County streetlights.  Through the testimony of Penniman and Dr. Moon, they

intend to introduce evidence that streetlights have caused hundreds of takes over the past 17 years.  Over the County's objections—and following an evidentiary hearing in which the experts collectively testified for nearly seven hours—this court has ruled that both experts may testify at trial about their conclusions that County streetlights take ESA-listed seabirds and have done so on numerous prior occasions.  But as the court repeatedly noted in its *Daubert* order, the fact that the experts will be permitted to testify does not preclude the County from challenging the credibility of those experts and seeking to persuade the factfinder that their testimony should be doubted, given minimal weight, or discounted altogether.  *See, e.g.*, *Conservation Council*, 2026 WL 1113471, at *5 ("The County is of course welcome to criticize or call into question the expertise and qualifications of Dr. Moon and Penniman at trial."); *id.* at *14 (noting that an argument about flaws in Plaintiffs' experts' methodology "may or may not prove persuasive for the factfinder at trial").  And indeed, the County's motion is replete with credibility challenges.  *See* Dkt. No. 150, at PageID.2928-31.

This is reason enough for the court to deny Plaintiffs' motion.  The Supreme Court has cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.  And even though no jury will sit in this case—all parties agree that a bench trial is appropriate here—the resolution of credibility and assessment of evidence are still

13

matters a judge should handle after a trial, not on summary judgment submissions.

That is because where "the credibility of the movant's witnesses is challenged by the

opposing party and specific bases for possible impeachment are shown, summary

judgment should be denied and the case allowed to proceed to trial."  10A Wright &

Miller's Federal Practice & Procedure § 2726 (4th ed. 2026).  Indeed, it is reversible error

for the court to credit the evidence of the moving party at the summary judgment stage.

*See, e.g., Tolan v. Cotton*, 572 U.S. 650, 659 (2014); *Sartor v. Arkansas Nat. Gas Corp.*, 321

U.S. 620, 627-29 (1944).  That is no less true of expert witness testimony.  As the

Supreme Court observed in *Sartor*, expert testimony, "even if entitled to some weight,

[has] no such conclusive force that there is error of law in refusing to follow [it]," and

although "the weight of the evidence [may] be found on a trial to be with" the movant,

"it may not withdraw [expert] witnesses from cross-examination."  321 U.S. at 627-28.

Instead, the "credibility and the weight to be given to [expert] opinions is to be

determined, after trial, in the regular manner."  *Id.* at 628-29.  Those same principles

apply here.

      Plaintiffs protest that the County "cannot defeat summary judgment merely by

expressing a desire to challenge the credibility of the Conservation Groups' witnesses at

trial."  Dkt. No. 158, at PageID.3540 (cleaned up).  That is true:  as the Ninth Circuit has

explained, a "party opposing summary judgment may not simply question the

credibility of the movant" but must "go beyond the pleadings and by its own evidence

'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). But it is not a fair characterization of the County's motion practice in this case. As noted above, the County has identified multiple specific factual bases upon which it seeks to challenge the credibility of Plaintiffs' experts; indeed, the arguments it raised regarding the credibility of Plaintiffs' experts were sufficiently weighty to merit the court holding an evidentiary hearing "to evaluate the testimony" of those experts. Dkt. No. 126. So while it is true that "neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility" will "suffice[] to avert summary judgment," *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983), the County has done more here than express a generalized desire to put Plaintiffs to their evidence. And even if—on the fuller record produced by the *Daubert* hearing—the County's arguments might appear unlikely to be persuasive in the end, it cannot be said that they no longer pose a "genuine issue for trial." *Far Out Prods.*, 247 F.3d at 997. To conclude otherwise would require the court to impermissibly weigh the evidence. *See Anderson*, 477 U.S. at 252 (at summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded [factfinder] could return a verdict for the [nonmovant] on the evidence presented").

Plaintiffs nonetheless contend that even if a factfinder were to conclude that Plaintiffs' experts were not credible—and therefore that Plaintiffs had adduced almost no evidence of past take[1]—summary judgment "would still be warranted based on the undisputed regulatory and scientific consensus that streetlights attract and ground listed seabirds."  Dkt. No. 158, at PageID.3541.  But that undisputed evidence would at best compel the conclusion that streetlights are reasonably certain to attract and ground listed seabirds *in general*.  In order to conclude that County streetlights are reasonably certain to attract and ground listed seabirds *on Maui*, a factfinder would need to draw the inference—vigorously contested by the County—that the generalized conclusions underlying the regulatory and scientific consensus are applicable to County streetlights and to Maui in particular.  *Compare White v. U.S. Army Corps of Eng'rs*, No. 22-cv-06143, 2024 WL 3470374, at *4-5 (N.D. Cal. May 6, 2024) (granting summary judgment to Plaintiff by "[a]pplying [location-specific] data to the scientific literature" in a case

---

[1]     Plaintiffs' point out that even without their experts' testimony, there is undisputed evidence in the record of past take, including a 2010 report prepared for Defendant Maui Electric Company (MECO) that describes the recovery of an ʻaʻo downed after striking a MECO streetlight in Pāʻia in 1998.  *See* Dkt. No. 157-16, at PageID.3518.  But the same reasoning discussed above applies to this evidence as well. Although a single incident of past take can in certain contexts support the issuance of an injunction under the ESA, *see, e.g., Defs. of Wildlife v. Martin*, 454 F. Supp. 2d 1085 (E.D. Wash. 2006), it would not be unreasonable for a factfinder in this case to infer—if the 1998 Pāʻia incident were the only undisputed evidence of past take—that a single instance of fallout over the course of nearly thirty years does not strongly suggest that future takes are reasonably certain to occur.  And where "a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv.*, 809 F.2d at 631.

where Defendants' did not dispute the essential causation theory).  Adopting that inference here would invert the summary judgment standard by requiring the court to draw an inference in Plaintiffs' favor.  *See Anderson*, 477 U.S. at 255.

Accordingly, as the court made clear in its *Daubert* order, the County will have an opportunity to make its credibility arguments at trial.  And because those arguments, if credited by a factfinder, present a genuine issue of material fact and could support the reasonable inference that Plaintiffs have not established a reasonably certain threat of imminent harm to the ESA-listed seabirds at issue in this case, Plaintiffs are not entitled to judgment as a matter of law on the question of whether County streetlights cause take.  *See, e.g., Our Children's Earth*, 2015 WL 12745786, at *5 (noting in an ESA take case that "[w]here the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party").  Plaintiffs' Motion for Summary Judgment is therefore DENIED.

**B.    When Reasonable Inferences Are Drawn in Plaintiffs' Favor, Summary Judgment Cannot be Granted to the County**

In its motion, the County largely repackages many of the same credibility arguments it made at the *Daubert* stage, pointing to perceived flaws in Plaintiffs' experts' methodology and internal inconsistencies in their testimony and conclusions. As the court explained in its *Daubert* order, those arguments are better suited to trial, not summary judgment.  At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

17

*Anderson*, 477 U.S. at 255.  Applying that standard here and crediting the record evidence and expert testimony describing the scientific consensus regarding the causal connection between seabird fallout and streetlights, as well as the hundreds of incidents of past take caused by County streetlights, a rational trier of fact could readily conclude that County streetlights pose a reasonably certain threat of imminent harm to ESA-listed seabirds.  And insofar as a reasonable factfinder could find in Plaintiffs' favor, summary judgment is not appropriate.  The County's motion is therefore also DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED. Defendant County of Maui's Motion for Summary Judgment is also DENIED.

IT IS SO ORDERED.

DATED:  June 16, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

*Conservation Council for Hawaii v. Hawaiian Electric Company, Inc.*, et al.; Civil No. 24-00494 MWJS-WRP, ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT COUNTY OF MAUI'S MOTION FOR SUMMARY JUDGMENT